IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**THE WHITESTONE GROUP, INC.,**

    Plaintiff,

    v.

**EXCALIBUR ASSOCIATES, INC.,**

    Defendant.

Case No. 2:22-cv-551
Judge Sarah D. Morrison
Magistrate Judge Kimberly A. Jolson

## OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion to File Documents Under Seal. (Doc. 3). Plaintiff The Whitestone Group, Inc. ("Whitestone") moves to file certain supporting exhibits to its Complaint under seal. Defendant Excalibur Associates, Inc. ("Excalibur") does not oppose the sealing. (*See* Doc. 7). For the following reasons, the Motion is **GRANTED in part and DENIED in part**. Plaintiff is **ORDERED** to file the unsealed and sealed exhibits consistent with this Opinion and Order within seven (7) days.

**I.   STANDARD**

Courts distinguish between limiting public disclosure of information during discovery versus the adjudicative stage of a case. *See Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 305 (6th Cir. 2016). "The line between these two stages, discovery and adjudicative, is crossed when the parties place material in the court record." *Id.* (citing *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002)). "Unlike information merely exchanged between the parties, '[t]he public has a strong interest in obtaining the information contained in the court record.'" *Shane Grp.*, 825 F.3d at 305 (quoting *Brown & Williamson Tobacco Corp. v. F.T.C.*,

710 F.2d 1165, 1180 (6th Cir. 1983)). For this reason, the moving party has a "heavy" burden of overcoming a "'strong presumption in favor of openness' as to court records." *Shane Grp.*, 825 F.3d at 305 (quoting *Brown & Williamson*, 710 F.2d at 1179); *see also Shane Grp.*, 825 F.3d at 305 ("Only the most compelling reasons can justify non-disclosure of judicial records." (quotation omitted)).

"[I]n civil litigation, only trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in confidence (such as the name of a minor victim of a sexual assault), is typically enough to overcome the presumption of access." *Shane Grp.*, 825 F.3d at 308 (citation and quotations omitted). "[T]he seal itself must be narrowly tailored to serve" the reason for sealing, which requires the moving party to "analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations." *Id.* at 305–06 (quotation omitted). Ultimately, the movant must show that "disclosure will work a clearly defined and serious injury . . . . And in delineating the injury to be prevented, specificity is essential." *Id.* at 307–08 (internal citations and quotations omitted). If there is a compelling reason, "the party must then show why those reasons outweigh the public interest in access to those records." *Kondash v. Kia Motors Am., Inc.*, 767 F. App'x 635, 637 (6th Cir. 2019) (citing *Shane Grp.*, 825 F.3d at 305). The Court "has an obligation to keep its records open for public inspection [and] that obligation is not conditioned upon the desires of the parties to the case." *Harrison v. Proctor & Gamble Co.*, No. 1:15-CV-514, 2017 WL 11454396, at *1–2 (S.D. Ohio Aug. 11, 2017) (citing *Shane Grp.*, 825 F.3d at 307.). The court "that chooses to seal court records must set forth specific findings and conclusions 'which justify nondisclosure to the public.'" *Shane Grp.*, 825 F.3d at 306 (citing *Brown & Williamson*, 710 F.2d at 1176).

**II.     DISCUSSION**

Whitestone moves to seal two exhibits accompanying its Complaint: Exhibit B, a non-disclosure agreement between Whitestone and Excalibur, and Exhibit D, a proposal submitted by the parties for an armed security officer services contract with the National Institute of Standards and Technology ("NIST"). Whitestone says the exhibits contain "sensitive, confidential, and proprietary information, including price sheets and strategic information." (Doc. 3 at 1). Disclosure of either exhibit, it says, "could significantly harm the parties and their competitive positions." (*Id.*).

To overcome "the strong presumption in favor of openness," parties who move to seal documents must demonstrate the three elements laid out in *Shane Group*: "(1) a compelling interest in sealing the records; (2) that the interest in sealing outweighs the public's interest in accessing the records; and (3) that the request is narrowly tailored." *Kondash*, 767 F. App'x at 637. Trade secrets are a "recognized exception to the right of public access to judicial records." *Brown & Williamson*, 710 F.2d at 1180. With respect to the *Shane Group* analysis, the existence of a trade secret will generally satisfy the first "compelling interest" element. *Kondash*, 767 F. App'x at 638.

A trade secret is information from which the holder "derives independent economic value . . . from [its] not being generally known to . . . others" and which "is the subject of efforts . . . to maintain its secrecy." *Handel's Enters., Inc. v. Schulenberg*, 765 F. App'x 117, 122 (6th Cir. 2019). Ohio has formulated a list of six non-dispositive factors to help determine the existence of a trade secret:

> (1) the extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

3

*Id.*

Upon *in camera* review of the documents, the Court finds the proposal submitted to NIST contains trade secret information from which Whitestone derives independent economic value, but the non-disclosure agreement does not. The non-disclosure agreement merely sets forth a definition of proprietary information and the methods by which the parties will identify and protect proprietary information. The agreement does not disclose trade secret information about the parties, and the form and terms of the agreement itself are not apparently proprietary. In many respects, the agreement resembles a stipulated protective order regularly filed publicly during litigation. Put simply, it is difficult to imagine what economic benefit a competitor could derive from having access to the non-disclosure agreement. Accordingly, Whitestone has no compelling interest in sealing the record, and cannot meet the Sixth Circuit's high standard for sealing. Regarding the non-disclosure agreement, Whitestone's Motion to Seal is **DENIED**.

The proposal submitted to NIST, however, contains extensive proprietary information. It describes in detail how Whitestone and Excalibur plan and execute service contracts, as well as how they hire and train employees. Moreover, it demonstrates how the parties competitively market themselves to win contracts. This is the kind of information that is unlikely to be shared to those outside the contracting parties, and the parties have expended effort and resources in developing their procedures. In the hands of the competitor, this information could be duplicated, and in vying for contracts, it could give a competitor the means by which to advantageously distinguish itself. Because Whitestone (and Excalibur) derive independent economic value from the proposal remaining secret, the Court finds it has a compelling interest in sealing.

Further, no countervailing public interest counsels against sealing the records. A public interest is at its height "when public safety is implicated." *Kondash*, 767 F. App'x at 637. The

present case does not invoke any of these "interests of public health and safety" that would outweigh Whitestone's compelling interest in maintaining a trade secret. *Id.* There is little benefit to the public—if any—in disclosing the contract proposal. Nor will the sealing of these documents obscure the overall evidentiary record on which the parties and the Court will base their reasoning. Once the NIST contract was won by the parties, they memorialized the terms for the project as relate to their subcontractor/prime contractor relationship—which is the focus of this litigation—in an addendum to their master teaming agreement, which was filed unsealed as Exhibit C to the Complaint. (Doc. 1, ¶ 28; *see* Doc. 1-3).

As a third and final consideration, Whitestone must also demonstrate that it has narrowly tailored the request to address only its compelling interest in sealing. *Shane Grp.*, 825 F.3d at 305–06. To meet the exacting standard for sealing, movants should generally redact only the objectionable portions of documents rather than seal them in their entirety. However, the Court is satisfied that Plaintiffs cannot effectively redact the proposal. As stated above, the proposal contains extensive proprietary information and is itself a proprietary marketing tool, so redaction would need to be extensive, if not complete, and would be no more legible than sealing in its entirety. Therefore, the Court finds Whitestone's request to seal the proposal sufficiently narrow.

Thus, regarding the proposal submitted to NIST, Whitestone's Motion to Seal is **GRANTED**.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to File Documents Under Seal (Doc. 3) is **GRANTED in part and DENIED in part**. Plaintiff is **ORDERED** to file the unsealed and sealed exhibits consistent with this Opinion and Order within seven (7) days.

IT IS SO ORDERED.


Date:  April 1, 2022                                             /s/ Kimberly A. Jolson
                                                                 KIMBERLY A. JOLSON
                                                                 UNITED STATES MAGISTRATE JUDGE